## COUNT I

Comes now Caranchini and for her first claim against the Pecks JOINTLY AND SEVERALY alleges and states as follows:

98.   Caranchini incorporates by references Paragraphs 1 through 97 hereinabove.

**99.**   Caranchini alleges the Pecks filed two knowingly false statutory claims against her: a (civil) Temporary Restraining Order which sought a Permanent Restraining Order and a (criminal) Municipal Charge allegedly for some type of "telephone harassment", both apparently on the grounds that Caranchini was allegedly "harassing" the Pecks by making telephone calls and sending emails/texts to RPeck to which LPeck had given herself access. Caranchini never had LPeck's telephone number or an email for her and therefore could not telephone her or text her. Both Pecks signed both claims which were filed in Johnson County District Court. **SEE EXHIBITS 3: Temporary Restraining Order and 4: Municipal Charge, the latter received for the first time when Caranchini bonded out of jail.**

100.   At the time the telephone calls, emails and texts were sent to RPeck, Caranchini was totally unaware that LPeck had access to them; she only became aware that LPeck had accessed these items when the Temporary Restraining Order was served on Caranchini at her home by a Johnson County "deputy" and the document purported to have LPeck's signature on it.

101.   Caranchini at no time intended the telephone calls, emails or texts to be viewed by LPeck and never intended then to be "harassing" of RPeck, let alone LPeck who she

71

never intended to see or hear them at all; Caranchini was merely trying to get RPeck to return Caranchini's attempts to reply to her calls to explain why he had "dumped her" Christmas Eve which was to be the beginning of their new relationship together which he had talked about since August of 2016 when LPeck had commenced divorce proceedings.

102. Additionally, a review of Caranchini's emails to RPeck demonstrates they were merely forwarding to the Pecks copies of an intended lawsuit against them for the actions they were engaging in **against** Caranchini; that is, intentionally inflicting emotional distress upon Caranchini. Sending a proposed lawsuit is not "harassment", it is what lawyers do prior to filing suit. The emails were only about the proposed lawsuits.

103. The Temporary Restraining Order was set for hearing on February 9, 2017 and LPeck did not appear nor did she testify thereby waiving her right to make such claim; only RPeck appeared with Heath Stuart, a Johnson County lawyer, and the Court ruled against RPeck and the restraining order was dissolved  and the case was found against RPeck and necessarily against LPeck.

104. The Court did not find a basis for this (Restraining Order) filing whatsoever. However, t**he Municipal charge was based on the identical facts as the Temporary Restraining Order for the reason that RPeck testified THERE WERE NO OTHER FACTS OTHER THOSE HE TESTIFIED TO IN THE TRO HEARING.** Hence, there is no basis whatsoever for the Municipal charge. **This makes BOTH charges knowingly false by both the Pecks** and the ADA engaging in a knowingly false proceeding and

72

keeping a bond in place on Caranchini when a Judge in the same Courthouse on the same set of facts has called RPeck a liar![42] Despite this, the Pecks did not withdraw their claims against Caranchini on the Municipal charge nor will the ADA McElhinney handling the matter although McElHinney admitted to Caranchini in a meeting during the first week of August that he did not need the agreement of the Pecks in order to dismiss the charges--He could dismiss the charges if he chose to do so. It is interesting that McElHinney asked Caranchini no questions whatsoever in that meeting HE chose to convene regarding that charge which he has chosen to maintain in place.

105. As a result of the Municipal Charge, Caranchini was arrested as set forth in detail in the above fact section at the conclusion of the hearing on the Restraining Order.

_____

[42] The undersigned is a "civil lawyer" by training and practiced as same between 1978 and her disbarment in approximately 2000 from the last court before whom she was then practicing (the Eighth Circuit Court of Appeals). During her practice she was admitted to practice before the Missouri Courts and did practice before the Missouri trial and appellate court and Missouri Supreme Court. Caranchini also practiced before the Kansas trial and appellate courts. Caranchini was admitted to practice in the Western District of Missouri Federal Trial Courts, the Eighth Circuit Court of Appeals, the Ninth Circuit Court of Appeals and the Kansas Federal Trial Courts; she also was admitted and submitted briefs before the United States Supreme Court. She continues to practice as an "attorney" before the Merit Systems Protection Board and the Equal Employment Opportunity Commission. The undersigned also assists lawyers around the country in writing briefs on "foreclosure issues" since 2010 in multiple jurisdictions. Consequently, although her background is limited to "civil matters", it would appear that RPeck cannot testify in two different proceedings to two different set of facts without that being raised before the Courts. If the facts in the TRO are considered "civil" and held to a "lower standard of proof", and the facts in the Municipal Charge are "criminal" and held to a "higher standard", there is still a problem from Caranchini's viewpoint. A District Court Judge in Kansas called RPeck a "liar" multiple times in Her ruling on the Pecks' Request for Restraining Order. In the Municipal Charge, Caranchini believes her Criminal defense lawyer could raise that ruling, or, Caranchini's criminal lawyer could at least raise that RPeck testified to a different set of facts. In any event, if RPeck testifies to another set of facts to support the Municipal Charge, it is difficult to believe that the Kansas District Court Judge will not take that into consideration.

Case 4:17-cv-00667-GAF   Document 9-1   Filed 10/24/17   Page 3 of 79

Caranchini was subjected to approximately 36 hours of jail and being sexually assaulted, denied food and medication because of LPeck's false statements and insistence that RPeck pursue the Municipal charge even though he stated on two separate occasions, as set forth in the facts above, he did not want Caranchini to go to jail.

106. Caranchini never engaged in any other type of conduct involving the Pecks; that is, she did not physically threaten them in any manner; she did not file any lawsuit against them even though in Caranchini's opinion she had the right to do so and is now pursuing this lawsuit against them for their engaging in false statements resulting in harm to Caranchini; she has not confronted them personally in any manner; she has only left a settlement offer with them regarding their claims against her; in short, Caranchini has engaged in no conduct whatsoever that would have violated the terms of the "Municipal Court Bond" when it was in place and the ADA McElhivnney never charged Caranchini with violating that bond in any way with regard to contacting the Pecks and then moved to dismiss the charge in its entirety. That charge was dismissed October 10 in its entirety and expungement is now pending.

107. As a result of LPeck's false statements and insistence that RPeck pursue the matter which he did do, which LPeck knew he would do because of her (LPeck's) threats that she would harm Caranchini if he would not join with her in the filings, Caranchini suffered as follows and will suffer in the future as follows:

74

--She was not advised of the charges against her when handcuffed and brought to jail and was never given the opportunity to make a "plea" to the charges;

--She was not given her right to make a telephone call to anyone when jailed;

--She was not allowed to bond out at any time while in jail until her family "found her" and insisted that she be bonded out;

--She was denied necessary medications (six rounds) over 36 hours while in jail;

--She was denied any food she could consume because of dietary restrictions;

--She was suffered to repeated taunts by jail personnel both male and female throughout her entire time in jail;

--She was leered at through the window of her first cell and the window was licked by one or two male sheriffs as they humped the door;

--She was screamed at when she stuck toilet paper on the window by the sheriffs who licked the window and threatened her;

--She then was sexually assaulted when they stormed into the cell;

--She was dragged out of her cell and put in another cell that had no toilet or water and her toes bled;

--She was denied water for 12 hours which given the drugs she was on, even though she had not been given them for a long period, made her extremely thirsty;

--She was subjected to intense lighting which increases the intensity of her migraines;

75

--She had to go to her doctor's intensive care unit upon being released to deal with her symptoms;

--She had multiple medical issues for the next several months;

--She has had migraine issues over the next three to four months requiring; additional medications and the migraines made it impossible to do any work for months for part of each day until she received her migraine shot in May;

--She had to take on meds for her depression which she has never suffered and never taken medication for;

--She had to take on seeing other doctors because of medical problems and needed changes in meds she is already taking;

--She has had to reduce the time spent working on a case for a "whistleblowing" government client and the filing of a claim for him until she was better able to work with his fact situation and did not file the claim until two days short of the statute of limitations running;

--She has had to deal with a severe loss of someone she has loved for nine years and expected to spend the rest of her life with and who she loved as much as her husband of 34 years;

--She has had to deal with her family and friends who have tried to help her through the most difficult period of her life since the death of her husband in 2003;

--She has had to deal with financial burdens occasioned by the costs associated with the Municipal charge; and

--She has false statements made about her in various government records.

108. That the action of LPeck was intentional at all times and meant to cause harm to Caranchini as LPeck believed it was Caranchini who had "broken up" her marriage as she would not accept responsibility that it was her actions and inactions that had caused the breakup of her marriage and her unwillingness to reconcile with RPeck who tried through working with their minister over two years to resolve their issues. And she was thus intent on breaking up RPeck's relationship with Caranchini in revenge for his having the relationship with Caranchini and Caranchini having the relationship with RPeck.

109. RPeck, however, is the proverbial "big boy" and must be held responsible for his actions as they ultimately have caused serious harm to Caranchini; at any time he could have ceased and desisted when he saw what his actions were causing but he did not and therefore should be held as much liable as LPeck despite his initial desire to "protect" Caranchini from LPeck who wished to harm Caranchini physically as well as emotionally for "taking" RPeck from her.

110. That therefore, these intentional acts subject both the Pecks to actual as well as punitive damages now and for the foreseeable future in an amount to be determined by a jury of Caranchini peers and to such "Injunctive Relief" as the Court may find appropriate as set forth hereinbelow.

77

111.     Caranchini therefore asks a jury find that the Pecks jointly and severally by their

Actions filed two false claims under Kansas law: a false Temporary Restraining Order and a

false Municipal Charge, both of which required Caranchini to defend herself personally and/or

by an attorney at cost to her and her family and subject her to the indignations of jail and being

sexually accosted in jail as well as having her constitutional liberties assaulted and continue to

be subject to psychiatric injury to this time and will in the future be subject to such injury, and

also subject to physical injury which requires her to have surgery, and will cause her permanent

injury; all as a result of their false charges and for which she now seeks monetary recompense

but also seeks to have changes made to the court system in Johnson County to prevent both

herself from being the subject in the future of such injuries again but also others being the

subject of such injuries through the injunctive relief she seeks hereinbelow, and for her costs

herein incurred and expended.

WHEREFORE, Caranchini seeks the decision of this Court and a jury in her favor and against

the Pecks and for actual and punitive damages in her favor and such Injunctive Relief as the Court

may find appropriate as requested separately hereinbelow and for her costs herein incurred and

expended.

## COUNT II

Caranchini for Count II of her claims against the RPeck and LPeck for libel and slander alleges and states as follows:

112. Caranchini incorporates by reference as if fully set forth herein Paragraphs 1 through 111 and particularly the allegations of Count 1 hereinabove.

113. The Pecks intentionally made false statements in the paperwork supporting the filing of both the Temporary Restraining Order and the filing of the paperwork supporting the Municipal Charge. Those false statements, independent of any additional legal filings or statements in court constitute both libel and slander against Caranchini as the statements were, and are, false and both Pecks knew they were false when made.

114. That additionally, the Pecks made false statements to the Police who interviewed them for the Municipal charge which are "on camera" to support the filing of the Municipal charge and "randomly" about Caranchini whether or not necessary for the filing of the Municipal Charge.

115. That all of the statements when made were knowingly made and known to be false to hurt Caranchini and cause her harm individually as well as in her business as an "attorney" for government employees in administrative forums of the MSPB and the EEOC.

116. That as a direct and proximate result of said statements and filings Caranchini has been caused to suffer emotionally, physically, has worried as to whether it will affect her business, has caused her to incur additional pain and suffering, has caused her to

Case 4:17-cv-00667-GAF   Document 9-1   Filed 10/24/17   Page 9 of 79

incur expense to defend the charges brought against her, all to her damage as follows:

- She was not advised of the charges against her when handcuffed and brought to jail and was never given the opportunity to make a "plea" to the charges;
- She was not given her right to make a telephone call to anyone when jailed;
- She was not allowed to bond out at any time while in jail until her family "found her" and insisted that she be bonded out;
- She was denied necessary medications (six rounds) of pills and four rounds of insulin over 36 hours while in jail;
- She was denied any food she could consume because of dietary restrictions;
- She was suffered to repeated taunts my jail personnel both male and female throughout her entire time in jail;
- She was leered at through the window of her first cell and the window was licked by one or two male sheriffs as they humped the door;
- She was screamed at when she stuck toilet paper on the window by the sheriffs who licked the window and threatened her;
- She then was sexually assaulted when they stormed into the cell;
- She was dragged out of her cell and put in another cell that had no toilet or water and her toes bled;

80

- She was denied water for 12 hours which given the drugs she was on, even though she had not been given them for a long period, made her extremely thirsty;

- She was subjected to intense lighting which increases the intensity of her migraines;

- She had to go to her doctor's intensive care unit upon being released to deal with her symptoms;

- She had multiple medical issues for the next months;

- She has had migraine issues over the last three to four months requiring an increase in the number of botox treatments she receives yearly (from three to four), additional medications and the migraines made it impossible to do any work for months for part of each day until she received her migraine shot in May;

- She had to take on meds for her depression which she has never suffered and never taken medication for;

- She had to take on seeing other doctors because of medical problems and needed changes in meds she is already taking;

- She has had to reduce the time spent working on a case for a "whistleblowing" government client and the filing of a claim for him until she was better able to work with his fact situation and did not file the claim until two days short of the statute of limitations running;

81

- She has had to deal with a severe loss of someone she has loved for nine years and expected to spend the rest of her life with and who she loved as much as her husband of 34 years;

- She has had to deal with her family and friends who have tried to help her through the most difficult period of her life since the death of her husband in 2003;

- She has had to deal with financial burdens occasioned by the costs associated with the Municipal charge;

117. That the actions of the Pecks were and are and will continue to be intentional entitling Caranchini to actual and punitive damages now and for the foreseeable future.

WHEREFORE, Caranchini seeks the decision of this Court and a jury in her favor and against the Pecks and for actual and punitive damages in her favor and for her costs herein incurred and expended..

## COUNT III

Caranchini for Count III of her claims against LPeck for harassment and threat of bodily harm as well as libel and slander alleges and states as follows:

118.    Caranchini incorporates by reference as if fully set forth herein paragraphs 1 through 117.

119.    As noted in the "fact section incorporated above", LPeck apparently was physically threatening Caranchini: RPeck stated at the time of the filing of the divorce he was removing the guns from the house; after the divorce was finalized there was another reference to the fact he was concerned about Caranchini's physical safety; and after the first of the year he stated he would only meet with Caranchini if she agreed not to sue LPeck in writing before he met with her with obvious reference to his previous statements that LPeck might physically harm her. Obviously her threats were real and numerous and RPeck was concerned for Caranchini's safety and believed he needed to "stay with LPeck" to prevent harm to Caranchini.

120.    That Caranchini considers such statements by RPeck regarding LPeck's threats to Caranchini "real" and believes she is threatened on a daily basis by LPeck quite frankly whether or not RPeck is with her.

121.    Likewise, Caranchini believes that LPeck by threatening Caranchini to RPeck is attempting to make RPeck remain with her (for whatever reason) and that she knows by threatening Caranchini RPeck will remain with her; LPeck is angry that

83

Caranchini allegedly "took" RPeck from her and does not acknowledge that it was

her actions and inactions that was the cause for RPeck being with Caranchini.

122. Also, as noted above in the fact section LPeck engaged in conduct such as: following

Caranchini on the highway; going up and down Caranchini's street; following

Caranchini to her doctor and placing a condom by her car and even going to her

church parking lot and placing a condom by her car; she is believed to be the cause

for setting off the house alarm and also leaving beer bottles in Caranchini's back

yard after the bond was in place and even letting the air out of her tires on one

occasion all requiring cameras put on her house in addition to the alarm system

Caranchini already had on the house.

123. LPeck has also libeled and slandered Caranchini's name calling her "crazy" in

numerous statements to the Police that are on video and which Caranchini has

obtained the disks of the meetings with the police and which the ADA put on a

report!

124. That Caranchini suffers daily from fear that LPeck may harm[43] her or kill her because

of the threats she has made to RPeck about Caranchini.

125. These actions caused Caranchini to be put in fear and have installed a $2,000 camera

system and to be extremely careful where and when she drove anywhere; to try to

always arm her alarm system and watch the lighting in her house. Caranchini in her

past law career has been subjected to being shot at and followed in the 80's and

---

[43] As Caranchini wrote the first draft of this document on July 26, 2017 her ADT alarm has been
going off. ADT could not explain the alarm signal and has to come to Caranchini's home to
check out the system. There have been other events such as this in the last month.

90's in cases she had but this was so much more "personal" and also frightening and contributed to the emotional distress that Caranchini has and continues to suffer despite being a very strong person who has been through quite a bit in her career and life.

126. That as a direct and proximate result of these actions Caranchini has had to seek additional medical care as it has increased her tension and migraines, requiring more doctor appointments and given her more tension and increased her back pain, caused her extreme emotional distress and caused this matter to be ongoing for months and months without any end in sight.

127. That also as a direct and proximate result of her actions she has made it difficult for Caranchini and RPeck to again have a relationship, which was of course LPeck's intention; whether Caranchini and RPeck's love for each other can survive LPeck's hatred for our love is unknown at this time; but it is sad that our love was tainted by a woman so hateful as love is a gift between two people; only time will tell whether that love can be rekindled as Caranchini had hoped to share the next 15 years of her life with RPeck and now it may not happen; hopefully RPeck also shared that dream and will find the strength to leave LPeck and move on with his life away from this destructive woman who has no love for him and merely uses him for her own purposes. There is no compensation for a lost relationship; money cannot compensate for a lost love but a verdict in Caranchini's behalf and money for her pain and suffering from LPeck can help.

128. That the actions of LPeck are intentional and therefore subject her to both actual and punitive damages. Again, having a jury say to LPeck you are VERY wrong and have hurt both RPeck and Caranchini and the love they shared and should pay for that is perhaps all a jury can say but must say to this woman. However, a Court can order a permanent Restraining Order against LPeck to maintain her "personal distance" from Caranchini and if need be from RPeck and Caranchini. There may also be sufficient grounds to incarcerate LPeck after the taking of her deposition and the deposition of RPeck a her conduct is outrageous and continues to be more outrageous in her letters to Caranchini.

WHEREFORE, Caranchini seeks the decision of this Court and a jury in her favor and against LPeck and for actual and punitive damages in her favor, and for a permanent Restraining Order against LPeck and for her costs herein incurred and expended and for injunctive relief as set forth hereinbelow.

## COUNT IV

Caranchini for her additional claims against LPeck based upon an email received the morning of October 18, 2017, alleges and states as follows:

129.     Caranchini incorporates paragraphs 1 through 128 hereinabove.

130.     Caranchini received the morning of October 18, 2018 an email allegedly from RPeck marked as **Exhibit 2.**

131.     This email, like the email of the January 18, 2017, marked as **Exhibit 5,** from RPeck, was not written by RPeck or sent by RPeck, but was both written by, and sent by, LPeck.

132.     Unlike the other "email", this one was purportedly "signed" by "Rick Peck, Jr." and then notarized, a signature that the undersigned has never known RPeck to use in the nine years she has known him.

133.     The entire email, as the entire January 18 email, distorts facts that occurred during Caranchini and RPeck's relationship and constitutes not only libel and slander against Caranchini, but attempts to demonstrates that RPeck never had a serious relationship with Caranchini by taking "morsels" of information and turning them into "something else".

134.     It is meant to inflict emotional distress upon Caranchini and although it does, it is so "out there", it is almost "funny" that LPeck would believe that anyone would believe this is a valid letter from RPeck despite its attempt to "state facts". It also demonstrates how "mentally disturbed" LPeck must be to write this letter.

87

135. That being said, it continues to attempt to cause Caranchini distress, and distort facts and a permanent injunction needs to be entered against LPeck to prevent her from this conduct in the future as it libel and slanders Caranchini's name and causes her continuing emotional distress.

136. The email also demonstrates facially that LPeck continues to bear a serious animus against Caranchini for carrying on a relationship with RPeck which RPeck initiated, not Caranchini, and continued for over eight years and broke off only to protect Caranchini from LPeck's threats, witness RPeck telling Caranchini he would only tell Caranchini "why he broke off the relationship if she agreed in writing not to sue LPeck". One has to wonder if this letter only serves to indicate that RPeck still indicates he "does in fact care for Caranchini" and LPeck is furious that she cannot stop his feelings for Caranchini and is attempting to hurt Caranchini as a result of her observations.

137. That this continuing harassment and thinly veiled threats is meant to interfere with Caranchini's life and Caranchini intends to put an injunction in place against LPeck and permit RPeck to meet with Caranchini to discuss HIS, not LPecks' view of Caranchini's and his past relationship and whether they can have a "future" of any kind together. Caranchini will also seek damages against LPeck for what she has caused and will cause Caranchini to suffer.

138. Caranchini does not give credence to the email, and does not believe it is the words or thoughts of RPeck but merely LPeck's "musings" which are meant to "hurt" Caranchini. Caranchini recognizes that and will take LPeck to Court to stop her

actions through an injunction and make LPeck pay for her actions to date in actual

and punitive damages.

WHEREFORE, Caranchini requests this Court ask a jury to find that LPeck has sought to inflict

mental angush intentionally upon Caranchini and she should be caused to pay actual and

punitive damages and also be subject to injunctive relief precluding her from harming

Caranchini in any manner in the future and for Caranchini's costs herein incurred and

expended.

### COUNT V

Caranchini for her claims against JOCO[44] pursuant to 42 U.S. C. 1982 et seq. alleges and

states as follows:

139.    Caranchini incorporates by reference paragraphs 1-138 hereinabove.

140.    Caranchini  seeks damages of JOCO as the entity believed to be responsible for:

    a.    The "management" of the personnel of the Johnson County Jail in Olathe,

       Kansas; and oversight of the procedures followed by that facility which result in

       the treatment of those incarcerated in that facility; this Count is directed to the

       actions of the personnel in that facility to which the undersigned was subjected

---

[44] It is not known whether Johnson County over sees the "jail", "owns" the jail or is responsible for its "management" and under any of those theories is responsible for the actions of the employees of the jail including but not limited to the "sheriffs who "walk" the jail and oogled me and sexually assaulted me, those who photographed me taking off my clothes, those who maintained my clothes and jewelry, the "nurse", the "doctor"—if any.  Also, it is not known whether individuals employed by the jail can be or should be individually sued as they may be the subject of separate representation and therefore herein below they are separately sued.

on February 9 and 10, 2017. If during discovery it becomes known that some other entity or "entities" is or are responsible for the actions, then this paragraph will be amended;

and

b. The management of the offices of the District Attorney, IF, the District Attorney is not SOLELY responsible for the actions of its Associate District Attorneys and the staff that reports to them;

141.    Caranchini on February 9, 2017 was handcuffed in the courtroom of Judge Trigg at the conclusion of a hearing heard in her courtroom; it was a Temporary Restraining Order brought by RPeck and LPeck against the undersigned.

142.    Caranchini won that case and as she was packing her briefcase and getting ready to leave three sheriffs came into the courtroom, approached Caranchini and literally without saying a word handcuffed Caranchini; packed up her purse and briefcase and took her by car to the Johnson County Jail across the street from the Courthouse.

143.    Caranchini was not advised at that time why she was handcuffed, what she was being charged with, and never was advised; she was brought onto a floor of the Jail and without telling Caranchini why, she was asked to give up her purse and briefcase and take off her jewelry and give it to two women. Again, she was not told why she had been brought to Jail.

90

144. Caranchini was then brought into a larger room and put in a jail cell and again she was not told why she was in jail and when she would be charged; this was Thursday, February 9, 2017 at approximately 3 p.m.

145. In about an hour, she was brought out of the cell by several women and told she would have to take off her clothes; again she was not told why she was there, what the charge was and why she could not bail out at that time; they made Caranchini remove all her clothes down to her panties as she was surrounded by three woman but men were within 20 feet and were looking at Caranchini as this was taking place and Caranchini was being photographed. They took Caranchini's skirt and bra and made her put on jail pants and again no reason was given whatsoever.

146. Caranchini was returned to her jail cell and because her watch was taken from her as well as her cell phone she had no idea what time it was although she believed it was time for her medications and she started to ask for them from passing guards to give her medications and let her see a doctor; no one responded; nor would they provide food as it is important that Caranchini eats on time.

147. How much time passed Caranchini did not know, but she repeatedly asked why she was there, why she could not bond out, what was the charge and no one would answer any questions whatsoever and this went on for hours. A second time period for night drugs and insulin was passing and Caranchini was feeling the effect of failure to have two rounds of medications including two rounds of insulin.

148. Caranchini was taken out of her cell to have some pictures taken and again no one explained why she was in the jail and when she would see a judge; Caranchini knew she had a right to see a Judge and could not understand why she was denied one.

149. Caranchini slept off and on overnight on a concrete bench and her hip started to ache but she knew it was close to morning and she still did not have any of her drugs—missing a third round of insulin and drugs without any explanation whatsoever as to why she was in jail. Caranchini started to yell at the jail staff as to what she was doing in jail and why she had not been charged and they did nothing.

150. At around noon after some awful moldy food came, Caranchini had to deal with Sheriffs licking the glass on the door and humping the door; Caranchini took the peanut butter from the lunch bag and taped toilet paper on the window.

151. The Sheriffs screamed at her to remove it but Caranchini refused saying she was not going to have them lick the window and stare at her sexually.

152. The Sheriff stormed in the cell, slammed Caranchini into a corner and twisted her arm and humped her and touched her and Caranchini yelled. They then dragged her out of the cell with no shoes and her toes bleeding to another cell with no toilet and no water. She was told she could "poop and pee on the floor".

153. Again, It was almost 24 hours and no one had told Caranchini why she was in jail or why she could not bail out of jail or let her make a telephone call to anyone, or let her see a doctor or give her any of her medications.

154. Hours went by and a psychologist or counselor came by and said to Caranchini that the Sheriffs thought "you (Caranchini) were nuts". She asked Caranchini some

questions and said "You are not crazy" and Caranchini just smiled. She then told Caranchini she would get her out of jail.

155.  Hours went by and Caranchini had had only two sips of water since being placed in the second cell which had no water fountain.

156.  Eventually, Caranchini got out of jail and went down the elevator and Caranchini's friend TB took Caranchini to her doctors' ER or home (Caranchini cannot remember now). Caranchini had missed four rounds of insulin and six rounds of medication and was "rattled" and shaking.

157.  Howe and his staff of lawyers should have known that the Sheriffs and staff in its jail were "out of control" and that what happened to Caranchini (as described in detail in a letter to the DA that Caranchini delivered the Monday after being released) was not an aberration as it was done in too "casual a manner as if it was routine". More importantly, the DA should have looked into why it took almost 24 hours for Judge Vokins to set bail so that Caranchini could bail out. Such acts and inactions are violations of the United States Constitution and Caranchini's rights; it is difficult for Caranchini to believe that she is the "first" person to be subjected to such conduct as it was clear to Caranchini that the jail personnel acted at all times as if this was "standard operating procedure" for them in dealing with "prisoners" who did not "cow tow" to them in "their" jail, such as Caranchini. Obviously too, it was clear that Judge Vokins saw no problem with delaying almost a full day before setting bond and never providing Caranchini any statement as to why she was in jail. Caranchini does not believe that the actions to which she was subjected are an "aberration" but

in fact occur on a regular basis but that those who are subjected to them do not either understand that their constitutional liberties are being violated or if they do, do not have the "wherewithal" to contest the actions to which they have been subjected or they do not wish to be subjected to the "hassle" so to speak of contesting the events and reliving them. Caranchini did understand that her rights were being violated; she has somewhat limited resources to hire an attorney and is using that for her Municipal charge but she does have 40 years of court knowledge much of it in the federal courts in constitutional law issues and she has the stamina to contest what has happened to her and will. She has in her career had many cases that lasted as much as seven, eight and nine years in the court systems, and she is fully prepared to do so now. She has taken cases from the lowest level of the system to the Supreme Court and is also willing to do so. She has been shot at, she has had her home assaulted; she has had to send her family to live in another state. She will do what is necessary.

158.    JOCO must understand that citizens of this country do have rights and you do not have the right to jail someone without informing them of their rights, of what they are charged in a timely manner and giving them the opportunity to bail out. Jail personnel do NOT have unlimited discretion as JOCO jail personnel repeatedly stated they did to Caranchini. This needs to be stopped.

159.    Likewise, bail needs to be reasonable. A $4,000 bail for making some texts and 12 telephone calls is unreasonable especially in light of a failure of the DA's office to do any investigation of the facts at all. Just a 15 minute meeting with Caranchini versus

94

a meeting with the Pecks would make one suspicious of their claims quite frankly yet no one took the time to do something. After Caranchini being jailed, suffering a sexual assault, going through nine months of this lawsuit, the ADA finally dismisses with prejudice the claim on the eve of it going to trial initiating it himself. That, quite frankly, is outrageous especially since his rationale was "its taking too much time!"

160. JOCO should be held liable for the following actions and inactions for violating Caranchini's constitutional rights as a United States citizen:

   a. Neither the elected DA Howe nor ADA McElHinney when a complaint was made against Caranchini contacted Caranchini regarding the claims against her to obtain her position on what occurred in opposition to what the Pecks claimed;

   b. Caranchini was assumed "guilty" and arrested in open court, demonstrating that Howe, or Fritz or McElhinney knew she would be in Court, and the charge was not made known to her even though it had been made on January 23, 2017 and she was incarcerated without knowledge of the charge and without being able to make bond all in violation of her constitutional rights;

   c. Howe, Fritz or McElhinney then "jailed" Caranchini by handcuffing her in open court when she posed no danger to any person and had multiple sheriffs take her to jail which is amusing for no other reason than that Caranchini was a 68 year old woman who is hardly threatening; JOCO essentially libeled and slandered.her reputation by such action.

95

d.  Either Howe or McElHinney then incarcerated Caranchini for over 36 hours[45] still
    not obtaining any information from her regarding the charges or informing her
    of the charges upon which she was being incarcerated;

e.  Caranchini was strip searched in the presence of men in the jail and embarrassed
    and humiliated again without cause as she had never been informed of the
    charges against her and was not until after her bail was paid by her sister and
    she was about to be released from the jail some 36 hours after she was jailed;

f.  Then Howe, Fritz, or McElHinney denied Caranchini the right to make a
    telephone call to anyone regarding her incarceration while she was incarcerated;

g.  Howe, Fritz or McElHinney denied Caranchini the right to make bail subjecting
    her to a horrid experience which denied her food and subjected her to jail
    personnel who repeatedly told Caranchini "they had discretion to do whatever
    they wanted with her";

h.  Although Caranchini's drug regimen should have required that she see a
    physician, she was denied a physician and she failed to receive six rounds of
    medications while she was incarcerated including three rounds of insulin

_____

[45]  It is not exactly known how long Caranchini was incarcerated.  It is also not known whether
the criminal records that Caranchini's criminal defense attorney has can be utilized in this
matter without independent discovery for them in this case.  Out of an abundance of caution
those items are NOT being physically used in this case at this time but will be requested in
discovery and as necessary the pleadings in this case will be amended. Caranchini cannot get
out of her mind those tapes as they are horrific.  Caranchini is interested particularly in the
tapes of the visits of the Police with the Pecks, the Police with Caranchini at the Pecks' property,
the records of JOCO at the jail and tapes that were made while Caranchini was assaulted in her
jail cell and was being strip searched.  Caranchini does not recall seeing any tapes of the assault
of her in jail or her being photographed when searched even though she remembers cameras.
Of course, she is still "mentally disturbed" by the actions of what occurred in jail.

causing very high sugar ratings and blood pressure readings when she was finally released and numerous visits to doctors since being released including the need for surgery on her back;

i. Howe, because of his lack of oversight of jail personnel, permitted the jail personnel to lick the window of Caranchini's jail cell in a sexual manner and make sexual comments to her as well as humping when assaulting her;

j. Howe by his inactions and actions in running the jail permitted jail personnel to assault Caranchini, a 68 year old woman, and slam her against a wall and yank her arm after slamming against her backside and then acting in a sexual manner against her backside;

k. Howe let these jail personnel yank Caranchini out of her cell and drag her across the cell floor and put her in a cell without water or food or toilet and told her to "poop and pee" on the floor; they continued to give her no food she could eat and no medications or care for her feet which were bleeding;

l. Jail personnel continued to tell Caranchini she needed to do what they said and be a "good girl";

m. Finally, Caranchini at the instance of a psychologist or social worked arranged for her to be bailed out of her cell after telling Caranchini the jail personnel thought she was "crazy" because she kept asking for bail and telephone call and medicine as they had never seen anyone do these things;

n. Caranchini informed Howe in two separate letters hand delivered to his office the following Monday and Tuesday of what occurred to her but he never contacted her at all regarding the events;

o. The elected DA Howe and the ADA, McElHinney, persisted in pursuing the charge despite being provided the transcript of the restraining order hearing in which a Judge called RPeck a liar multiple times making it extremely difficult for pursuit of any other charge (in Caranchini's legal opinion on collateral estoppel grounds) and where the charges were identical to those in the Temporary Restraining Order **and RPeck said THERE WERE NO OTHER ISSUES. Likewise, what juror would believe RPeck if a Judge had called him a liar?**

p. The elected and managing DA refused to withdraw the claims against Caranchini for over nine months!;

q. Howe engaged in the above conduct in setting high bails and incarcerating "innocent" individuals who have the ""appearance of money for the purpose of gaining money for Johnson County by intimidating them so they will not contest the charges in Court and take diversion –essentially admitting guilt-- and then forfeiting their bail so they won't have to deal anymore with the court system;

r. Howe and McElhinney still have no evidence whatsoever that Caranchini has done anything to either of the Pecks other than make 12 telephone calls totally 36 minutes which were less in time than the one call RPeck made to Caranchini totaling 37 minutes, and the texts she sent, many of which were texts sent by

98

LPeck to Caranchini or texts sent by Caranchii over LPeck's Email to Caranchini. Also, they are limited in time to FOUR DAYSalledgedly send texts, --  DECEMBER 24 TO DECEMBER 29;

s.  The actions of both Howe and McElHinney are questionable at best and at worse part of a plan by JOCO to gain money while absolutely ignoring constitutional liberties of citizens and pursuing false claims.

161.  JOCO's DAs have tolerated the actions of the jail personnel knowing as attorneys that the jail personnel daily violate those in the jail civil rights and do nothing whatsoever to cure the situation and therefore JOCO is liable for these continuing actions.

162.  That the above actions and inactions constitute repeated violations of Caranchini's constitutional rights as an American citizen and are violations of 42 U.S.C. Sec 1982 et seq. and the Eighth Amendment to the United States Constitution and subjected her to needless violations and physical and mental harm which continued throughout her incarceration and continue to this day in an effort to force her to take diversion to avoid further jail time or agree not to sue, which Caranchini would not do as it admits in essence she is wrong when she is not. Caranchini will not agree to be forced to do something illegal just to enrich JOCO when her rights are being violated which in essence admit the Pecks are right when they have lied repeatedly.[46]

---

[46]  While Caranchini remains on a wrongful bond, RPeck has in the last month started to follow Caranchini from her PT location and also down State Line on multiple occasions. If Caranchini were to complain, no doubt she would

Case 4:17-cv-00667-GAF   Document 9-1   Filed 10/24/17   Page 29 of 79

163. Caranchini has suffered harm and will continue to suffer harm in the future and has also suffered as follows all in violation of her Constituional liberties –42 U.S.C. 1982 et seq and the 8th Amendment to the United States Constitution:

■ She was not allowed to bond out and suffered the indignities associated with jail time

■ She was denied necessary medications (six rounds) over 36 hours which contributed to a week of very bad medical issues

■ She was denied any food she could consume because of dietary restrictions which took over a week to rectify

■ She was suffered to repeated taunts by jail personnel

■ She was sexually assaulted in her cell

■ She was dragged out of her cell and put in another cell that had no toilet or water and suffered these indignities

■ She was denied water for 12 hours and the lack of medicine caused extreme thirst because the drugs she takes cause thirst themselves

■ She was subjected to intense lighting which started to increase the intensity of her migraines and has increased her migraines for months requiring additional medications and more frequent application of botox

■ She had to go to her doctor's intensive care unit upon being released

■ She had multiple medical issues for the last nine months and continues to see multiple doctors, therapist, psychiatrist and psychologist, neurologist and

be thought merely to be trying to file a false claim against RPeck; this is nothing but more harassment of Caranchini.

Case 4:17-cv-00667-GAF   Document 9-1   Filed 10/24/17   Page 30 of 79

now is seeing a surgeon for back surgery and has been told she must have back surgery.

- She had a high level of migraine issues over the first four months after being released from jail requiring additional medications and the migraines made it impossible to do any work for months for part of each day; the usual migraine shot in February had almost no effect whatsoever and the next shot was given a bit earlier and with different additional drugs to help with the headaches;

- She had to take on meds for her depression which she has never suffered and had a drug interaction between the initial drug prescribed and her botox shot which had to be corrected because of her high level of drug interactions;

- She had to take on seeing other doctors because of medical problems and needed changes in meds she is already taking

- She has had to reduce the time spent working on a case for a "whistleblowing" government client and the filing of a claim for him until she was better able to work with his fact situation

- She has had to deal with a severe loss of someone she has loved for nine years and expected to spend the rest of her life with and who she loved as much as her husband of 34 years and tries to make sense of what he has done and the statements he made to her the day he left the relationship and what he has done since that day

■ She has had to deal with her family and friends who have tried to help her through the most difficult period of her life since the death of her husband in 2003.

■ She has had to deal with financial burdens occasioned by the costs associated with the Municipal charge.

164. That the actions set forth in Count V, Paragraphs 139 to 163 are violations of 42 U.S.C. sec

165. That the actions of Johnson County entitle Caranchini to actual damages in a sum to be determined by a jury of Caranchini's peers in addition to her costs incurred.

WHEREFORE, Caranchini requests a jury award for her actual and punitive[47] damages for not only the wrongful conduct but the total violation of an American citizen's rights which were done knowingly and for her costs herein incurred and expended.

### COUNT VI

Caranchini for her claims against District Attorney Stephen Howe, Assistant District Attorney John Fritz and Assistant District Attorney Michael McElhinney alleges and states as follows:

166. Caranchini incorporates by reference Paragraphs 1 through 165.

---

[47] Caranchini is well aware that "punitive" damages against a city or state entity are generally not allowed; that being said, the outrageous nature of these actions on a continuing basis that are basic violations of constitutional liberties may qualify for an exception. Caranchini wishes to make a claim and preserve the right to appeal this issue to a higher appellate court, including the United States Supreme Court. Our Constitutional liberties are under assault these days and what the undersigned suffered is but one example.

102

167. Alternative to Count V, or in addition to Count V, Caranchini seeks relief against the District Attorney Stephen Howe, hereinafter referred to as "Howe", Assistant District Attorney John Fritz, hereinafter referred to as "Fritz," and Assistant District Attorney Michael McElhinney, hereinafter referred to as "McElhinney" for their flagrant actions against Caranchini that had no legitimate basis and which were ultimately dismissed by McElhinney in their entirety after ten months at a cost of over $12,000 to the undersigned plus the bond which as of the filing of this First Amended Complaint has not been returned to Caranchini which is supposed to occur and then will not be returned with interest!

168. The charge was brought against Caranchini by the Pecks before ADA Fritz who made no attempt whatsoever to contact Caranchini re the veracity of the charges on or about January 23, 2017.

169. And although the Pecks' TRO was served on Caranchini at her home prior to that hearing; no attempt was made to serve the Municipal Charge or make arrangements for her to come in and post a bond and set a hearing on the charge.

170. Rather, at the conclusion of the TRO hearing, which Caranchini won and in which Judge Trigg called RPeck a liar, Caranchini was arrested and taken to jail on the identical facts that RPeck had just lost on for his TRO.

171. Although Caranchini repeatedly asked what the charge was she had been arrested on and to bond out, it took over 30 hours to bond out and during that time she was given none of her meds, including her insulin, and no food she could eat and was sexually assaulted by three sheriffs by being humped in her cell.

103

172.    These three lawyers could have arranged for a hearing on the charge and a bond before the TRO hearing or at the same time so that Caranchini would not have to go to jail, but they would not do so; rather they arranged to have her handcuffed and taken to jail. The reason why is not known and will not be known until their depositions will be taken, but in Caranchini's opinion it had to do with getting "more money" for JOCO on BOND.

173.    The actions of these three men given the undersigned's age and lack of criminal background is outrageous and should expose each of them to punitive damages for their actions given the high rates of blood pressure and high numbers on her insulin Caranchini was suffering at the time she was released; there was absolutely no reason she should not have been told why she was in jail; there was no reason why she should not have been released. Yet from reading the file it is clear that the bond was not even "set" until after she was in jail!

174.    In this Country,[48] one of the first things you learn in Criminal law in law school is that when charged you are told WHAT YOU ARE BEING CHARGED WITH. THAT DID NOT HAPPEN TO THE UNDERSIGNED EVEN THOUGH THE DA KNEW FOR OVER TWO PLUS WEEKS WHAT HE INTENDED TO CHARGE CARANCHINI WITH!

175.    Further, after being released, the ADA refused to meet with Caranchini and discuss the facts; he refused to discuss a reasonable plan and instead totally took the Peck's position, which was keep GGC away from RPeck (because he was embarrassed as to what had happened to her, and LPeck wanted Caranchini away from RPeck because

_____

[48] This country was settled on the principle that you must be presumed innocent—not guilty as in so many European countries. It seems that JOCO has forgotten that principal.

104

she knew he still loved her). However, after Caranchini filed 10-12 Motions on the eve of trial demonstrating the absurdity of the ADA's position suddenly he took the position "it was too much work".

176. The actions above described go beyond what should be the "normal" and "acceptable" manner in which such cases are pursued; that is, a case of such miniscule nature involving two adults in their 60's and an irate "ex wife" should not involve a "DA, and two ADAs". Such is a bad use of time if nothing else and will be the subject of questioning in their depositions.

177. After almost ten months the case was dismissed, expunged and bond released. **See EXHIBIT 6**

178. These actions give rise to punitive[49] damages against these three lawyers; only because the undersigned fought them did they finally dismiss the charges even in the face of a judge who called the undersigned "incompetent" and treated the undersigned in a mysognistic manner.

179. Caranchini seeks damages against each of these three lawyers for actual and punitive damages for filing false charges against the undersigned and pursuing these false charges given the ruling of Judge Trigg on February 9, 2017 which clearly precluded pursuit of the Municipal charge and for punitive damages for continuing to pursue the manner despite the obvious lack of any basis for these claims given Judge Triggs' ruling.

---

[49] It is not known if the DA and ADA's if they were working outside the scope of their employment are responsible for punitive damages personally.

180.    Caranchini also seeks damages under 42 U.S.C. Sec. 1982 et seq if these DA's claim

they are merely an "arm" of Johnson County and therefore employees; in which

event, they are acting in violation of the law and in violation of 42 U.S.C. Sec. 1982 et

seq. and subjecting Caranchini to violation of her constitutional liberties.

WHEREFORE,   Caranchini requests that a jury of her peers find in her behalf and against

each of these defendants for actual and punitive damages and for her costs herein incurred

and expended whether as individuals or as employees of JOCO.


### COUNT VII

Caranchini for her claims against The Honorable Dan Vokins and The Honorable

James Phelan alleges and states as follows:

181.    Caranchini incorporates by reference paragraphs 1 through 180.

182.    Caranchini has appeared before countless judges in countless jurisdictions in

numerous states since 1978.

183.    Especially in the 70's and 80's Caranchini was subjected to extreme sexist behavior

by State and Federal Judges, as well as male defense attorneys, and it was not

because she was a "young and good looking woman" but  because she was a

"woman with a head on her shoulders who pursued sexual harassment and

discrimination cases"  and who like many other women were now pursuing legal

careers and were pursuing high level executives as well as major corporations in the

metropolitan Kansas City area, cities and counties for sexual harassment and discrimination against their employees.

184. Caranchini found her recent experiences in the Johnson County Magistrate Courtrooms and jail devoid of any attention to the civil liberties that they are supposed to guarantee and ensure. This lawsuit is meant to not only get Caranchini some change but other citizens in the form of "injunctive relief". Money does not cure all things. Sometimes it takes "change" and with this claim against these two judges, Caranchini seeks "change". Caranchini cannot walk away from this and Caranchini is going to attempt to get change.

185. Caranchini suffered the following violations of her constitutional liberties (42 U.S.C. Sec 1982/83) growing out of the denial of her right to be charged, have a telephone call, make bail within a reasonable time period, be able to have her drugs during her incarceration and be seen by a doctor and have food she could eat;

a. In Judge Vokins' Courtroom to which Caranchini was initially assigned at the time she was incarcerated and while she was incarcerated:

--The case was never called up to charge Caranchini and set bond even though the charges were put in place on January 23, 2017 by Fritz or until after Caranchini was arrested February 9, 2017 and according to the documents was not called up until February 10 almost 24 hours after Caranchini was put in jail;

--Judge Vokins allowed the jail staff to claim Caranchini was "uncooperative" (which was stamped on a form in Caranchini's file")

107

when he must have known that that statement probably was not true and there was a problem and the Court made no attempt to find out the problem

--Judge Vokins arbitrarily set a bond of $4,000 for 12 telephone calls and some texts over four days starting on the day RPeck broke up with Caranchini when Caranchini was informed by Jackson County, Missouri that the actions of which she was charged generally have a bond of $500.00 in Jackson County. Where did this huge amount come from and why? Is there any standard chart of bonds and if not why not?

b.     Judge Phelan permitted this case to go on for almost nine months without any concern for the length of time and how it affected Caranchini and tried to elongate the time repeatedly to punish Caranchini and make Caranchini forfeit the bond and take diversion; Judge Phelan also put Caranchini on a bond that required "no drinking" when alcohol had nothing whatsoever to do with the alleged crime of telephone calls and texts.

--When Caranchini finally asked to represent herself because she had spent too much money on a lawyer, Judge Phelan insulted her in open court saying she was "incompetent" after Caranchini listed all the courthouses Caranchini had been admitted to (including the United States Supreme Court) and insisted Caranchini have a lawyer appointed for her. This was after Caranchini had filed

10 motions and he clearly did not want to rule these ten motions in Caranchini's favor which would have to be done given the facts.

--he treated not only Caranchini but the women in his Courtroom badly appointing mostly men to represent[50] the women and all those women got sentences or some type of lighter degree of long term motion hanging over their head which also caused them to forfeit their bond. Again, this just demonstrated his dislike for women in Caranchini's opinion and it astounded Caranchini in this day and age.

--After the motions were filed and the new lawyer was appointed the case was going to be delayed another two months which was absurd and nothing could be done.

--Finally, McElhinney decided to dismiss the case because it was "too much work".[51] This is outrageous after nine months and on bond. Caranchini is still waiting for the Bond money to be returned to her as well as the expungement to occur.

185.    That these Judges by the above actions violated 42 U.S.C. 1982 et seq in their court rooms repeatedly and they should be removed from the bench and replaced. They do not serve the public but merely serve Johnson County to get "more money" at the cost of violating

--------------------------

[50] One of the appointments was of a lawyer HS who represented RPeck during the TRO hearing immediately prior to my being arrested. I watched him as he passed "answers" to RPeck as I asked RPeck questions. I stood to make an objection to Judge Trigg but she said to me "I see it" and would not let me actually state what I saw. It was disgusting.
[51] If this statement had been made in a federal court, the judge would have sanctioned the lawyer for the costs of the litigation!

citizens' rights and it must stop. The only way to stop it is to remove these judges by whatever means is available.

WHEREFORE, Caranchini requests a jury find that the actions of these Judges were wrongful and violated the Constitutional rights of citizens appearing before them and that in the future all citizens must be advised immediately upon being arrested of what they are charged, in writing, and the amount of bond, in writing and allowed to make two phone calls; That additionally, no municipal charge shall be pending for more than four months; all such claims shall be tried and resolved in four months or less.

## INJUNCTIVE RELIEF PENDING A JURY DECISION SOUGHT FROM THE PECKS

Caranchini during the pendency of this litigation against the Pecks and given that the Pecks have already lost the hearing on the Temporary Restraining Order and damages may be sought immediately on that false claim AND the ADA has Dismissed with prejudice the Municipal Charge and expungement is in the process of being processed as well as return of the bond; seeks the following injunctive relief from the Pecks during the pendency of this case:

   a. A filing made with the Federal Court listing all real property they have any interest in, and providing the title papers thereto, and the Court preventing the Pecks from deeding said property to any third party during the pendency of this litigation;

   b. A filing made with the Federal Court listing all non real property, such as trucks or cars or other property of any value in excess of $5,000 and the title thereto

110

preventing the Pecks from selling said property during the pendency of this litigation;

c. A filing made with the Federal Court listing all bank accounts (invcluding any accounts containing monies that are being held for interest) other than a checking account with amounts less than $2,000, but any account that is a savings, or other form of money market or stock investment of any value with the Court and the Court will prevent the Pecks from selling such stocks an assets for the pendency of this lawsuit.

d. The Pecks shall file with the Court every 30 days proof that the real property has not been allocated to any third party; that all financial assets remain in place and have not been sold or transferred in any manner whatsoever pending the resolution of this case.

e. LPeck shall not come within ½ mile of Caranchini's home on either side of the State Line; if she is seen within that distance she will be in violation of this Court's order.

f. LPeck shall not contact Caranchini in any manner whatsoever for the remainder of the lawsuit or any relatives of Caranchini including sending any more emails or letters over RPecks name but actually prepared and sent by RPeck to Caranchini over his name or prepared by LPeck and sent over her name with "false" signatures of RPeck and false notarials EXCEPT WITH REGARD TO THE PROCESSING OF THIS LAWSUIT, AND IT SHALL BE RPECK WHO COMMUNICATES REGARDING THE PROCESSING OF THE LAWSUIT OR AN ATTORNEY ;

111

g. LPeck shall not follow Caranchini or follow any car in which she sees Caranchini as a passenger at any time;

h. LPeck shall not approach Caranchini's car for any reason whether or not Caranchini is in the car;

i. LPeck shall not discuss with RPeck this matter;

j. RPeck shall discuss this matter only with any attorney he retains, the Court, or Caranchini or any attorney she retains.

**k.** Neither LPeck or RPeck shall change residences or leave the State of Kansas or without advising the Federal Court in advance of such change and the Court shall approve of such change but the Pecks must maintain a residence in Kansas during the pendency of this litigation at all times and at all times be available for all hearings and for their depositions and for trial otherwise default judgment shall be entered against one or both of them and the properties upon which there are a lien shall be forfeited in their entirety and given to Caranchini.

## INJUNCTIVE RELIEF WITH REGARD TO JOHNSON COUNTY

With regard to Caranchini, she requests this Court:

Caranchini asks this Court, as a result of the actions that were taken against her on February 9 and 10, 2017, to enter an Order that Johnson County make the following changes to its procedures within 45 days of this Order and provide such changes to this Court to be made a part of the record of this case for the reason that this Court has found that the Johnson County jail violates the constitutional liberties of all citizens of the United States by its actions and inactions as shown by what Plaintiff Caranchini was subjected to during her incarceration and that Caranchini may be subjected to such actions in the future.

1) That no person be incarcerated at Johnson County jail unless they first have been advised in a hearing of intended charges against them and have the right to plead to such charges in a court of law, and are informed of the bail that they most post and are given time to post such bond as follows:

2) That no person who has had no prior criminal charge of any kind against them shall be required to post any bond of any kind and be incarcerated if the first charge is of a non-violent nature;

3) That no person shall be incarcerated without being notified of the charge and being able to post bond; no person shall be essentially "jailed" without foreknowledge of the charge for which they are being jailed and opportunity to post bail and given the opportunity to make a telephone call at Johnson County expense;

4) That a standard form of "bonds" shall be developed for various crimes that is published and it shall not be subject to change for various municipal charges;

5) No person shall be incarcerated without the opportunity to respond **in court** to a written charge against them and the opportunity to post bond unless they have engaged in a violent act;

6) If the individual has not been advised of their right to an attorney, they will be so advised or of their right to make a telephone call they will be advised and given the time to make such call before being incarcerated. Records shall be kept

7) To institute procedures that require that all new inmates be "entered into a system" within one hour of arriving at the jail and record kept and given to the inmate upon the inmate's release that includes record of when they arrived, their belongings were logged; they were given "jail" clothing; their "mug shot" was taken; information taken on any necessary meds required to be given; they were put in a cell and the cell number is noted; the time and type of food they were given; any request for medication is noted in the record and when it is given; any change of cell; any "incidents" are noted and who was the Sheriff involved; any transfer of the inmate to any other cell and the reason(s) therefor.

8) That all new inmates be given the opportunity to make two telephone calls at Johnson County expense to whomever upon being brought to the intake area within one hour of being brought to the intake area, and such telephone calls are logged;

9) That any inmate requesting to see a doctor regarding any medical issues they have be given that opportunity within one hour of such request and a written document

be signed by the "inmate" and a person within the jail acknowledging the request and agreeing to contact a MEDICAL DOCTOR (not nurse) and that all drugs that each such inmate is currently taking be given in the manner in which the inmate requests and that records are made and kept regarding the request for drugs and the administration of such drugs and given to the inmate upon the inmate being released;

10) all inmates dietary restrictions be met and records kept on the meals given, the timing of the meals and the nature of the meals and such record also be given the inmate upon release;

11) That no inmate who has been arrested on a new charge without a hearing being had on the charge and the inmate being found guilty shall be placed in a cell more than three hours; such retention being a violation of constitutional rights to be considered innocent until proven guilty; and all records of the incarceration be given to the person upon release; That a complete record be made of such incarceration until the inmate is transferred to another facility or released and given the inmate or his representative and signed for by that person;

12) That the sheriffs who were in charge of each shift in which Caranchini was present be terminated for violating Caranchini's civil liberties;

13) That the sheriffs who assaulted Caranchini be terminated immediately for their actions;

14) That the woman sheriff who advised Caranchini that she would do and they could do whatever they wanted based upon "discretion" be fired;

115

15) That the doctor who was on duty while Caranchini was incarcerated be fired for incompetence and medical malpractice as well as his "nurse";

16) That there are medical records maintained for inmates that are given to them when they leave the jail; these should include records of any "assaults" by sheriffs on the inmates;

17) That training be given to every new person in this cell "block" before they commence working and that every six months the personnel's training is renewed and every six months to all personnel in the "cell block" which is acknowledged in writing by each such person, about procedures and what they can and cannot do and that all such personnel be told they do not have any discretion over treatment of inmates and shall sign a document so acknowledging;

18) That all new cases filed against individuals be set for hearing within 14 days of original filing and service on the individual and no one shall be jailed without an investigation first by the DA of the charges being made against the individual and the individual being given an opportunity to reply to the charges made against him/her with an attorney if so requested;

19) That no person shall be incarcerated unless after service an opportunity is given to the individual to resolve the matter before being jailed;

20) Johnson County will publish such rules as noted above and give such rules to all individuals subject to possible incarceration at the time of their arrest and signed for by them.

116

21) Johnson County shall enact such laws as are necessary to enforce these rules within 30 days of the Court entering an Order regarding these requirements and publish in any news source available and any legal publication for six months weekly these new regulations and make them available to any and all lawyers practicing within the State of Kansas, Johnson County within the last two years.

Caranchini seeks the above relief for herself in the event she is ever subjected to another wrongful claim and also be created for all those who are incarcerated so that their rights are preserved.

## REQUEST FOR TRIAL BY JURY ON ALL COUNTS AND CLAIMS

Caranchini hereby makes demand for trial by jury on all claims set forth hereinabove against all parties and does not waive any claim whatsoever to trial by jury.

Respectfully submitted,

Gwendolyn G. Caranchini, Plaintiff, pro se
1203 West 62nd Street
Kansas City, Missouri 64113
816-223-7178
gwencaranchini@gmail.com

State of Missouri     )
                      )
County of Jackson     )

Subscribed and sworn to before me the undersigned notary public in and for the above county and state this _____23rd_____ day of October, 2017.

_____
Notary Public

Dated: Oct. 23, 2017

ROBERT L. THATCH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires 1/30/2020
Commission # 12477597

117

118

PAGE 1

 Gmail

# answer to your questions via email

1 message

**Rick Peck** <rickpeck5309@gmail.com>                     Wed, Jan 18, 2017 at 8:46 PM
To: gwen caranchini <gwencaranchini@gmail.com>

You know how I do not like writing and I want you to know this has taken me quite a while to put together because it is not me but am writing you since all the communication I have had with you over the phone or in person has been misconstrued and/or somehow ignored.

Somehow you have a preconceived idea that what we did and had was Not an illicit affair. That my marriage could just be totally ignored because you feel that we loved each other. Well that is NOT correct. What we did was wrong on so many levels, where do I begin. But first, 1) though shalt not commit adultery. This was an adulteress relationship that should NEVER have happened the way it did. No matter what my wife did or did not do, did not give me the right to make the decisions I did to have an affair with you or anyone for that matter. Now if I was so unhappy, I did have some options and one was to tell her that I was so unhappy that I needed to leave the marriage, but that never happened because I never did that. You and I just thought of ourselves and did what we wanted at the time it started and had an illicit affair. You and I are the ones in the wrong here. How can you think you can take me as your prize to church and show off the trophy you won in a divorce and an 8 year affair?

I have now come to my senses and realized I acted so very badly from the beginning but so did you. We have very bad karma on our backs and I for one am confessing it to God and asking for forgiveness from God and the wife I had because I showed NO honor and NO integrity. And neither did you.

Yes I cared for you and when you asked me if I loved you, I always showed you with my fingers, a little bit. You went into this relationship with your eyes wide open. You wanted me and you were so rude to Lola from the beginning and I had already done wrong and did not know how to fix the mess I had stepped in, thusly giving you the upper hand from the beginning. Oh yes, Lola has all the hateful emails that you sent her and I have reread all of them and you know what, she was NEVER hateful to you. Even when you came to our house half drunk at 4:00am in the morning and I had to go out to calm you down because you were wanting to tell Lola about our affair and that was in 2009. And from that time till today, as you delight in making sure that Lola knows all the horrible grueling details of our sorted affair, you have

continued holding the fact that if I didn't call you or see you or do what you wanted, you would get ahold of her.

When I was busy and was trying to find myself and decide if I could go on with this affair and hadn't called you or answered you, you came out to my house and sat on the private road an waited for me to go to work and followed me till I felt save that Lola would not see you. That was another bullying scare tactic to make sure that I stayed under control. There were many other times you threatened to tell Lola about our sorted affair and I kept hoping maybe you would get tired of me and just let go but your clutches just got tighter and your made up delusions of a grand life with me, which I have read over and over in these millions of texts, emails and voice mails just get bigger. I NEVER promised you any life together. I NEVER promised I was coming to live with you. I NEVER promised any more relationship with you then we had. Never that I would wake up in bed with you EVER, NEVER. I NEVER told you I was coming to Charlotte's for dinner on Friday night. I said maybe. All the plans that were in your head were made up in your head. I did however ask if I could put some stuff in your garage on Friday as I continued to move out of my home which my wife and I shared together and because of you and me being liar's, cheats and totally dishonest, she just wanted me gone but gave me to the end of the year. I NEVER told you I was staying at your house and in fact, my daughter was helping me look for a hotel and also said I could stay there a few nights. You may have thought you wanted to have a fresh start on a new relationship with me but I only wanted to be by myself and live alone if I was not going to live with Lola and NEVER promised YOU any different.

As for not calling, the phone that you wanted so you could talk to me and put in my truck was your idea, not mine, quit working so I could not communicate that to you. It again was dishonest and sneaky. It was continuing to dishonor my wife. The one thing we are forgetting, we dishonored another person who did not deserve to be treated like this and does not deserve any of the abuse you have been dishing out about her daily. I may have told you things that pissed me off about Lola and was really upset about them, but I had options and I did not use them. You taking all the things I may have said or been concerned about and exaggerating it all and blasting it everywhere and trashing my wife is just showing how little concern you have for other people and a hateful side of you that I needed to see and I am really disappointed by seeing it. In fact, this has all been about you in all the texts, and all the emails, and all the voice mails. How angry you are with Lola because she is still in my life. She gave me my freedom and told me to leave. I made the choice that I came to and asked Lola if we could try to work on this again and that is what we are doing. *NO guarantees and if it does not work out in the end, I will go on my own but it will still NOT be with you. I will be alone, on my own.* Please reread this as many times as you need to because I do not want you to misconstrue it again in any communications to me or anyone else. After making this decision, I then called to meet with you and gave you that decision on December 24, 2016. Being a

man, I may not have used the best timing and I did not do any of that on purpose but
Lola did NOT HAVE anything to do with my decision to end yours and my affair nor
the timing of that because when I made that decision, she did not know if the affair
was already over or it was still an ongoing thing and that is when she found out it
was still and ongoing thing. It was all mine decision and I told her what I was going
to do and she gave me the grace and latitude to follow what I felt like God was
telling me to do. I am sorry for not thinking about that timing. At that time, I really
did not remember what time of year it was because I was in major pain also and new
I was making a seriously hard decision that was affecting other's lives and no matter
what time it would be, it would have been a sensitive time for a woman. I did cry
real tears. You were a friend and I had known you for many years and we shared
WAY MORE that we had a right to share but none the less we did. I was and am
sorry that you were hurt but sooner or later that hurt was coming because as I told
you earlier, my feelings were not as strong as yours. We all know that when we
embark on a relationship, there is a possibility that one will feel stronger than
another. We have all been there. In this case, you felt much stronger and I NEVER
lied to you and I NEVER told you I loved you as you did me. NEVER. Again, I
NEVER told you we would end up in a relationship. NEVER. Again, I am sorry that
there was not a way to make you understand when I am talking to you but you really
do not listen to me anymore than you say Lola does or you would have heard all that
I am putting in writing now because I said it many times. I instead, used the
cheating option rather than dealing with my relationship or just ENDING it. So Lola
was wrong and I was wrong and you were wrong and we all made this into a huge
mess.

As for Lola following you and driving by your house. She has proof of where she
was all the times you accused her of all these things and she does not have a silver
car like the one you had to see in 2013 or 2014 when you would have come out here
because she had no reason to even go by your house because she had no idea that
we were having an affair. As for her following you on the interstate. I told her about
the email you sent and she was coming back from Overland Park Sprint store where
she had an appointment that can be confirmed. I am talking to her and telling her to
not go home so you could confront her because there would be no 3rd party there to
hear that conversation and as she passed you, she thought it kinda looked like you
and then seen the MO license plate and asked me what color car you had. I told her
silver and she said, I think I just passed her and she is coming out, so she went to
the Sheriff's department to get an escort home. I wanted her to do that and after all
the exaggerations that you have made up about her, I am so happy that I had her do
that. And while I am on exaggerations about Lola!! I am in disbelieve at what you
have come up with that Lola is dangerous and could harm me or you or anyone
else. She has NEVER harmed anyone and could have at least 50 people come to
court to testify to her stability and character as a person and a sane and rational
person as well at the counselor she immediately employed to make sure she WAS
staying sane and rational in all that she had found out and was dealing with and

helping her to deal through to keep her blood pressure down. Since it was stroke high the day she asked if I was sleeping with you and I answered with the truth for the first time in a long time and surprising, it felt good to not lie any longer.

For some reason you have been trying to paint a picture of Lola as being insane, crazy, needing to be in a mental hospital and God knows what else. I am in such unbelieve as to how horrible you have talked about another person that is very clear, you consider as a non-entity, it has blown me away. I now know that I was being barraged with this horrible talk about Lola so much that I was so used to it and then I would carry it home and start in with an argument if she just asked me a question. I am sure that behavior has a psychological name but I am not the one to know that answer but I do know that I was reacting to your negative daily feedback of Lola and when I didn't have as much communication with you, I began to see what was going on and that I was being fed very negative emotionally, acid charged dialogue about Lola and I was carrying it home with me. We are not having that problem at all at this time. Interesting isn't it?

As for the sex in Lola's and my relationship. IT IS NONE OF YOUR BUSINESS AND I WANT YOU TO CEASE AND DESIST EVER SPEAKING ABOUT IT AGAIN. AGAIN, IT IS NONE OF YOUR BUSINESS. And I do not want any more of anything that went on with us put in anymore emails or texts or voice mails. What we did on a scale of 1-10, 10 being the worst, was an 11 and we continued to pretend we were doing what was right and that it was OK. It wasn't on any scale and there was no way to make it right.

So one more time, I am sorry for all that has transpired in this last 8 years because every bit of it was built and based on a lie. YOU and I, both, have to take responsibility for that. If you are hurting, I am sorry, but You as well as I have to take full responsibility for ALL of it. I am going to say I am sorry one more time and then I feel that you need to say you are sorry to Lola for treating her as you have and did all you could to step in and destroy her marriage because I have already done that many times because I feel so guilty that I did not do the right thing and just get out of the marriage. Then when you and I would be or over as we are now, you would NOT have been able to try to blame Lola for any of it as you are using her for a whipping post now. It is sad and shameful.

I have received tons more texts and emails about why won't I sit and talk with you. First, is the reason above but secondly, I tried again on Saturday morning and you declined saying you would not give me or Lola anything in writing that you would not sue either of us and it was not going to be on my terms. Well then now you want to meet again. Who's terms would it be on now? You say that I am a control freak and I would say there is a possibility that we may both have an issue with that. But as you said today, be a man and meet with me. My answer is, I think I have very clearly given you all the answers I have about the entirety of our *affair*. As I said on the phone, I am done. The affair is over. I made a decision to try to do the right

thing and if Lola and I cannot make this work, I will go it alone on my own. I do not want any more communication with you as it would be impossible to give Lola and I a real chance at making this work with again a 3rd party involved. I am making a prayerful pact with God to do the right, honorable and correct thing in all that I undertake.

This will be my last communication unless you still choose to drag us and all this through the court system, because you can, please CEASE AND DESIST.

Thank you for the time we shared and the friendship we shared. I want you to go on and find someone that truly can love you as you have the capability of loving and have a happy life.

Rick

PAGE 2

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

STATE OF KANSAS,
      Plaintiff,

                                  Case Number: 17DV00111
                                  Division No: M3

v.

GWENDOLYN CARANCHINI,
      Defendant.

### ORDER OF DISMISSAL

NOW on this 4th day of October, 2017 the above captioned matter comes on for

hearing by agreement of the parties. The State appears by ADA Michael McElhinney.

Respondent appears in person and by Jill K.B. Kenney of Kenney Law Firm, LLC. The

Court orders:

1.) The Bond is dissolved as of the date of this Order and all requirements therein immediately stopped. All monies shall be returned in full to the Defendant.
2.) Defendant agrees to have no contact with Richard Peck and/or Lola Peck for a period of 12 months from the date of filing of this case which will be January 23, 2018 with an exception of contact as allowed through the Federal Rules of Civil Procedure for proceeding on any lawsuit pursued by Defendant. Contact for personal matters is not allowed.
3.) The Office of the District Attorney will not oppose a Motion for Expungement of this case.
4.) Defendant retains any right(s) to pursue or amend any legal claims.

Whereupon, after reviewing the file, the Court dismisses the case with prejudice.

It is so Ordered.

                                    /s/ JAMES E PHELAN
                                    Dated: 10/10/17
          /s/ MEGAN AHSENS
          Dated: 10/06/17
          James Phelan
          Judge of the District Court
          Division M3

Clerk of the District Court, Johnson County Kansas
10/10/17 09:55am JC

1

Prepared and Submitted by:

Jill K.B. Kenney, #20397
Kenney Law Firm, LLC
142 N. Cherry, Suite #4
Olathe, KS 66061
Telephone:     913-890-2078
Facsimile:      913-815-8811
jill@kenneylaw.net
ATTORNEY FOR DEFENDANT

Approved by:

_____
Michael McElhinney
Assistant District Attorney
P.O. Box 728
Olathe, KS 66051-0728
913-715-3000
ATTORNEY FOR THE STATE

## VERIFICATION

STATE OF KANSAS          )
                         ) ss.
COUNTY OF JOHNSON        )

GWENDOLYN CARANCHINI, of lawful age and first duly sworn upon an oath
states:

Affiant is the Defendant herein, states and verifies that Affiant is familiar with the
contents of the foregoing Order and that the statements, agreements, and other matters
contained in it are true and correct.

_____
Petitioner, GWENDOLYN CARANCHINI

SUBSCRIBED AND SWORN to before me, a Notary Public, this 5th day of

October, 2017.

_____
NOTARY PUBLIC

NOTARY PUBLIC - State of Kansas
HUNTER L. LINDQUIST
My Appt. Expires 8/21/21

2

Clerk of the District Court, Johnson County Kansas
10/10/17  09:55am JC

PAGE 3

*Heath Street* (handwritten)

10:30 mon (handwritten top-left)

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS

*Richard W Peck rv* (handwritten)
Plaintiff

Case No. '17 C V 0 0 3 0 5

M-2 (handwritten)

(File Stamp)

vs.

*Gwen Caranchini* (handwritten)
Defendant

**PERSONAL SERVICE ONLY**

Address: *1203 w 62 ST*
*Kc mo*

## SUMMONS AND NOTICE OF HEARING FOR PROTECTION ORDER

To the above-named defendant:

You are notified that the attached Petition for Protection was filed against you in this court and that the Court ☒ has entered the attached Temporary Orders, or ☐ has not entered Temporary Orders against you.

A hearing on this matter has been scheduled on:

Date: *2/3*, 20*17*
Time: *10:0* ☒ a.m. ☐ p.m.
Place: *M-2 Rm/07*
Johnson County Courthouse
100 N. Kansas Ave.
Olathe, KS 66061

If you do not attend the hearing, final orders may be issued against you. You may appear and present evidence as to why the orders sought should not be granted. You may file an answer to the petition but are not required to do so. You have the right to appear with or without an attorney.

Date: *1/18/17*

_____
Judge Of The District Court, or
Clerk of the District Court/Deputy

To the Sheriff of *Jackson*
County, *MO,*, serve Defendant at:
*1203 w 62 ST*
*Kc mo*

Service on Chief Law Enforcement Officer:
*Johnson County*
*sheriff*

CLERK OF DISTRICT COURT
JOHNSON COUNTY, KS

2017 JAN 18 AM 10: 38

03/03/11

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
Protection from Stalking (K.S.A. 60-31a01 *et seq.*)

## Temporary Order of Protection from Stalking

| Judge or Division: M-2 | Case Number: 17 C V 0 0 3 0 5 |
|---|---|
| | Court ORI Number: |

| Plaintiff: Richard W Peck, Jr | Plaintiff Identifiers: | (Date File Stamp) |
|---|---|---|
| vs. | Year of Birth: Aug 12 53 | |
| | Sex: ☐ F ☑ M | |

Defendant: Gwen Carancini

Defendant Identifiers:

| SEX | RACE | YOB | HT | WT |
|---|---|---|---|---|
| F | W | 1944 | 5 5 | 150 |
| HAIR | EYES | LAST 4 DIGITS OF SSN (IF KNOWN) | | |
| Brown | Brown | | | |
| DRIVERS LICENSE # | | DL STATE | DL EXP. DATE | |
| | | MO. | | |

Address
1203 W 62 ST
KC MO

Protected Person(s): _Richard Peck, Jr_ (names)

This order and its terms are directed at and apply to Defendant only.

## THIS TEMPORARY ORDER SHALL REMAIN IN EFFECT UNTIL SERVICE OF THE FINAL ORDER OR UNTIL TERMINATED BY ORDER OF THE COURT.

To the Sheriff of _Jackson_
County, _MO_, serve Defendant at:
_Gwen Carancini's_
_1203 W 62 ST_
_KC MO._

Service on Chief Law Enforcement Officer:
_Johnson County_
_Sheriff_

## ONLY THE COURT CAN CHANGE THIS ORDER.

CLERK OF DISTRICT COURT
JOHNSON COUNTY, KS
2017 JAN 18 AM 10: 38

SCAN DATE 2017/01/18 16:53

Case 4:17-cv-00667-GAF   Document 9-1   Filed 10/24/17   Page 60 of 79

The Court finds: (Only the provision(s) initialed by the Judge apply.)

_77_ Plaintiff filed a written verified petition on requesting a Temporary Order of
Protection from Stalking.

_77_ This Court has jurisdiction over Plaintiff, Defendant and subject matter.

_77_ Plaintiff has established a *prima facie* case of stalking sufficient for the court to issue a temporary order
of protection from stalking. A hearing has been set and a summons has been issued.

## Order

The Court orders:
- The plaintiff's address and telephone number shall remain confidential for the protection of the protected person(s).
- The defendant shall not follow, harass, telephone, contact or otherwise communicate with the protected person(s). [ NCIC 01 & 05 ]
- The defendant shall not abuse, molest, or interfere with the privacy rights of the protected person(s) wherever they may be. [ NCIC 01 & 02 ]
- The defendant shall not contact the protected person(s), either directly or indirectly. [ NCIC 04 & 05 ]
- The defendant shall not direct or request another to contact the protected person(s), either directly or indirectly. [ NCIC 04 & 05 ]

The defendant shall not enter or come on or around the premises, the residence or workplace where the protected person(s) reside, stays or works. [ NCIC 04 ]

CERTIFICATE OF COMPLIANCE WITH THE VIOLENCE AGAINST WOMEN ACT (VAWA): This Order meets all the requirements of the Violence Against Women Act, 18 U.S.C. § 2265. This Court has jurisdiction of the parties and the subject matter; the defendant has been afforded notice and a timely opportunity to be heard as provided by the laws of Kansas. This Order is enforceable in all 50 states, the District of Columbia, all Indian tribal courts and all United States territories and shall be enforced as if it were an order of that jurisdiction pursuant to 18 U.S.C. § 2265.

Additional terms of this order are set forth below, if any.

Other Provisions:
_____ 1. Other orders necessary to promote the safety of the protected person(s):

SO ORDERED:

_1/18/17_
Date

_Thomas E. Fo..._
Judge of the District Court

Case 4:17-cv-00667-GAF   Document 9-1   Filed 10/24/17   Page 61 of 79

## WARNINGS TO DEFENDANT

- This order is effective when signed by the Judge. Law enforcement officials shall immediately enforce this order.
- Violation of this order may constitute: violation of a protective order as provided in K.S.A. 21-3843, and amendments thereto; stalking as provided in K.S.A. 21-3438, and amendments thereto; assault as provided in K.S.A. 21-3408, and amendments thereto; battery as provided in K.S.A. 21-3412, and amendments thereto; and criminal trespass as provided in K.S.A. 21-3721(a)(1)(C), and amendments thereto, and may result in prosecution and conviction under Kansas criminal statutes.
- Violation of this order may also be punishable as contempt of this Court.
- If the defendant has a concealed carry license, that license is subject to revocation pursuant to K.S.A. 75-7c07, and amendments thereto. After a defendant's concealed carry license has been revoked, continuing to carry a concealed weapon may constitute a violation of K.S.A. 21-4201, and amendments thereto.
- Violation of this order may subject the defendant to prosecution for such federal crimes, including but not limited to: Interstate travel to commit domestic violence; Interstate stalking; and Interstate violation of a protection order.

### Notice of Extension of this Temporary Order
(Pursuant to K.S.A. 60-31a05)

If a hearing on the petition for protection is continued, the court may extend this Temporary Order of Protection from Stalking for additional periods of time as it deems necessary.

Case 4:17-cv-00667-GAF   Document 9-1   Filed 10/24/17   Page 62 of 79

PAGE 4

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS

STATE OF KANSAS,

Plaintiff,

VS.                                    **COMPLAINT**        No.

DV

GWENDOLYN CARANCHINI,

Defendant.

STATE OF KANSAS, JOHNSON COUNTY, ss:

I, John C. Fritz, Assistant District Attorney of said County, being duly sworn on oath state to the Court that

GWENDOLYN CARANCHINI

did the following:

COUNT I — That on and through the 24th day of December, 2016, and the 29th day of December, 2016, in the County of Johnson, State of Kansas, GWENDOLYN CARANCHINI did then and there unlawfully, willfully and by use of telecommunications device, knowingly make or transmit any comment, request, suggestion, proposal, image or text which is obscene, lewd, lascivious or indecent, or make or transmit a call, whether or not conversation ensues, with the intent to abuse, threaten or harass any person at the receiving end, or make or cause a telecommunications device to repeatedly ring or activate with the intent to harass any person at the receiving end, a class A non-person misdemeanor, which constitutes a domestic violence offense, in violation of K.S.A. 21 6206, K.S.A. 21 6602(a)(1) and K.S.A. 22-4616. (harassment by telephone)

I declare under penalty of perjury that the foregoing is true and correct.

Executed by and on this date.

/s/ JOHN FRITZ
Dated: 01/20/17

John C. Fritz/drh #13176
Assistant District Attorney
P.O. Box 728
Olathe, Kansas 66051-0728
(913) 715-3000

WITNESSES:
Richard Peck
Deputy Stiefer
911 Dispatch Personnel
Dana Gouge

Lola Peck
Deputy Speichinger
Mark Blackwell

Clerk of the District Court, Johnson County Kansas
01/23/17  07:00am ES

## CASH BOND RECEIPT

Trans No  1700782
Receipt No  1700782

10 FEB 2017
06:43pm

JOHNSON COUNTY CLERK OF THE DISTRICT COURT
100 NORTH KANSAS
OLATHE, KS 66061-3273

Case # 17DV00111        Cit/WS# 17000245

Bond for GWENDOLYN CARANCHINI

Charge
21-6206 HARASSMENT BY PHONE OR FAX

Agcy   Type          Bond Paid
JCSO   GPS CREDIT C  $3,500.00

## IMPORTANT - READ CAREFULLY

Cash Bond will be refunded as ordered by the court and returned only by mail.

Bond Paid by    PATRICIA WEBBER
                PATRICIA WEBBER                    520-749-4719
                4307 N SABINO MT DR TUCSON, AZ 85750

Received by: CORY SMITH
                        _____ Deputy Clerk of The District Court
        PSN: _____

                                                    _____ at _____.
Received: $_____ from the Johnson County Sheriff's Deputy on _____   (Date)      (Time)

_____
Deputy Clerk of the District Court

IN THE DISTRICT COURT OF JOHNSON COUNTY KANSAS
CRIMINAL COURT DEPARTMENT

STATE OF KANSAS
Plaintiff

vs.

Case No. 17DV00111
Court No. M4

GWENDOLYN CARANCHINI
Defendant

## NO CONTACT ORDER

The Court orders that:

    X    Defendant shall have NO CONTACT with:

        LOLA MAE PECK, whether or not defendant is in custody.

**THIS ORDER IS EFFECTIVE WHEN MADE. LAW ENFORCEMENT AGENCIES SHALL ENFORCE THE ORDER IMMEDIATELY UPON RECEIPT. THE DEFENDANT IS HEREBY PUT ON NOTICE THAT VIOLATIONS OF THE NO CONTACT ORDER(S) MAY CONSTITUTE THE VIOLATION OF A PROTECTIVE ORDER AS PROVIDED IN K.S.A. 21-5924.**

/s/ DANIEL W. VOKINS
DISTRICT MAGISTRATE JUDGE

_____
Defendant's Signature

## RETURN OF SERVICE

I hereby certify that I am an agent of the Johnson County Sheriff's Office, Olathe, Kansas, and that I have served a copy of the above and foregoing No Contact Order to the above-named defendant, personally. I hereby certify under penalty of perjury that the foregoing is true and correct.

_____
Johnson County Sheriff's Office
Dated: _____

THE STATE OF KANSAS, JOHNSON COUNTY, SS.
Case 17DV0011.    **Appear in Division M3**    Receipt 1700782

*On the 10th day of FEBRUARY, 2017, GWENDOLYN CARANCHINI has been arrested* and is in custody.  She desires to give bond for her appearance before the JOHNSON COUNTY DISTRICT COURT, OLATHE, KANSAS.    Therefore, we, GWENDOLYN CARANCHINI, as principal and/or PATRICIA WEBBER as sureties approved by the Court, jointly and severally acknowledge ourselves to owe the State of Kansas the sum of $3500.00, GPS CREDIT CARD to be levied on our goods and chattels, lands, and tenements if there is default in the conditions of this appearance bond.

The conditions of this appearance bond are:
1. NO USE OF ILLEGAL DRUGS OR CONTROLLED SUBSTANCES/SUBMIT TO TESTING WHEN DIRECTED BY COURT.
2. NO ALCOHOL/NO FIREARMS
3. NO CONTACT VICTIM(S)/WITNESSES, THEIR RESIDENCE/
4. EMPLOYMENT WHETHER OR NOT THEY POST BOND
(additional conditions apply on page 2)

If GWENDOLYN CARANCHINI shall personally be and appear before the **JOHNSON COUNTY DISTRICT COURT, on the 5th day of APRIL, 2017 at 03:30pm,** or when ordered by the Court, then and there to answer to the charge(s) as set out in the complaint and to abide by the judgment of said Court, then this recognizance will remain in full force and effect. If the defendant leaves the jurisdiction of the named Court without its approval or violates any conditions imposed by the Court, then this appearance bond shall become forfeit.

**WARNING**: Intimidation of a witness or victim by you or on your behalf will subject you to full sanction of the law. (see KSA 21-5909)

Taken and acknowledged before me on this day and year first above written.

_____
PSN                Deputy Clerk of the District Court

**AFFIDAVIT OF SURETIES**

STATE OF KANSAS, JOHNSON COUNTY ,SS.
The undersigned solemnly swear that she is a resident of said County and State, and that she jointly and severally, has assets worth $7000.00, over and above all exemptions, debts, and liabilities, so help me God.

Sworn to and signed in my presence on FEB 10, 2017.

YOU ARE THEREFORE COMMANDED, forthwith, to arrest and bring the said

GWENDOLYN CARANCHINI

to Olathe, in said County, to be dealt with according to law; and then and there return this writ. Witness my hand and seal of said Court in the said County, this 23rd day of January, 2017

Defendant's bond is set at $3,500 cash or surety with the following conditions:

NO USE OF ILLEGAL DRUGS OR CONTROLLED SUBSTANCES/SUBMIT TO TESTING WHEN DIRECTED BY COURT
NO ALCOHOL
NO FIREARMS
NO CONTACT VICTIM(S)/WITNESSES, THEIR RESIDENCE/ EMPLOYMENT WHETHER OR NOT THEY POST BOND


/s/ DANIEL W VOKINS
01/23/17
Judge of the District Court



17DV0111 GWENDOLYN CARANCHINI

SHERIFF'S RETURN

Received this Writ this 23rd day of January 2017,
and same was executed this
9th day of February 2017, by
Deputy O'Grady #1326 of the Johnson
County Sheriff's Office. Subject
was lodged in the Johnson County
Adult Detention Center.

WAR

CALVIN HAYDEN
SHERIFF

Deputy Sheriff

SCAN DATE 2017/02/16 14:38

CLERK OF DISTRICT COURT
JOHNSON COUNTY, KS

2017 FEB 16 AM 11:43

Additional Bond Conditions:

    \_\_\_ 5. MENTAL HEALTH EVALUATION PRIOR TO BONDING
    \_\_\_ 6. FOLLOW MENTAL HEALTH RECOMMENDATIONS INCLUDING TAKING
    \_\_\_ 7. OF MEDICATION AS PRESCRIBED

<div align="center">

_____
Initals/PSN

</div>

PAGE 5

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION


GWENDOLYN, a/k/a GWEN CARANCHINI,   )
    1203 West 62nd Street   )
    Kansas City, Missouri 64113   )
       )
       Plaintiff,   )
       )
Vs.   ) CASE NO. 4:17cv-000667-DPR
       )
LOLA PECK and RICK PECK, collectively;   )
And LOLA PECK and RICK PECK,   )
individually;<sup>1</sup>   )
    32640 WEST 2O7th Street   )
    Edgerton, Kansas  66021   )
       )
    And   )
       )

---

<sup>1</sup>     Since the filing of the initial Complaint the Office of the District Attorney has dismissed in its entirety the Municipal charge it filed against Caranchini in January of 2017 and the attached Order has been entered by the Johnson County District Court. **SEE EX. 1 (Expungement remains pending as well as return of the bond)** This Court will note it specifically provides that Caranchini may have "contact" with the Pecks with regard to legal matters thereby modifying the "No Contact Order".  The "No Contact" Order, which accompanied the filing of the Municipal charge, will be dissolved, January 23, 2018 in its entirety.  This First  Amended Complaint was prepared to be filed in the United States District Court for the Western District of Missouri Western Division the week of October 23, 2017. Before formal service was made, it was provided informally to the Pecks and the Johnson County Attorney to see if formal service could be avoided and an agreed upon date for "reply" could be arrived at by all parties. Unfortunately, neither the Pecks, jointly or individually, nor any of the Johnson County Defendants agreed to such "informal service" which is often done in Missouri.  Consequently, formal service will be made after the First Amended Complaint is formally filed in the United States District Court for the Western District of Missouri Western Division at the commencement of the week beginning October 23, 2017.  A "Notice" will be provided the Court with addresses, telephone numbers and emails for its information to contact the parties.  The filing is made within the 90 day time period and there are five additional individuals added since originally filed August 11.

1

THE COUNTY OF JOHNSON, STATE OF          )
KANSAS, including its JAIL and workforce  )
On February 9 and 10, 2017 located in     )
Olathe, Kansas;                           )
                                          )
          And                             )
                                          )
THE OFFICE OF THE DISTRICT ATTORNEY,      )
and more particularly,                    )
STEPHEN HOWE, the District Attorney,      )
JOHN FRITZ, AND MICHAEL McELHINNEY,       )
 Assistant District Attorneys,            )
                                          )
          And                             )
                                          )
THE HONORABLE DAN  VOKINS                 )
     Johnson County District Court Judge  )
     Johnson County, Kansas               )
                                          )
          And                             )
                                          )
THE HONORABLE JAMES E. PHELAN             )
     Johnson County District Court Judge  )
     Johnson County, Kansas               )
                                          )
               Defendants.                )


## GWEN G. CARANCHINI'S

## FIRST AMENDED COMPLAINT UNDER MISSOURI/KANSAS
STATE LAW AS APPLICABLE AND FEDERAL LAW

## AGAINST

LOLA PECK, RICK PECK, (JOINTLY AND SEVERALLY); THE COUNTY OF JOHNSON, STATE OF
KANSAS, INCLUDING THE JOHNSON COUNTY "JAIL" FACILITY" IN OLATHE, KANSAS; THE
DISTRICT ATTORNEYS' OFFICE, and more specifically, STEPHEN HOWE,  JOHN FRITZ, and
MICHAEL McELHINNEY;  AND THE FOLLOWING JUDGES OF THE COURTS OF JOHNSON
COUNTY, KANSAS:  THE HONORABLE JUDGE DAN VOKINS AND JUDGE JAMES E. PHELAN

Case 4:17-cv-00667-GAF   Document 9-1   Filed 10/24/17   Page 73 of 79

Comes now Gwen G. Caranchini, hereinafter referred to as "Caranchini", Plaintiff herein, and makes the following claims against Rick and Lola Peck, collectively, hereinafter referred to as the "Pecks"; against Lola Peck individually, hereinafter referred to as LPeck; against Johnson County, Kansas, hereinafter referred to as JOCO; against the Johnson County Jail facility located in downtown Olathe, Kansas, hereinafter referred to as "the Jail", (if this is an independent entity from Johnson County); against The District Attorney Stephen Howe, hereinafter referred to as Howe, against the Assistant District Attorney, Michael McElhinney, hereinafter referred to as McElhinney, against the Assistant District Attorney John Fritz, hereinafter referred to as Fritz; against the Honorable Dan Vokins, hereinafter referred to as Judge Vokins; and The Honorable Judge James E. Phelan, hereinafter referred to as Judge Phelan, and collectively referred to as "the Judges".

## DIRECTORY TO PORTIONS OF LAWSUIT

|  | Pages |
|---|---|
| Directory to Brief………………………………………………………………………….. | 3 |
| Parties to Lawsuit……….. ………………………………………………………………… | 5 |
| Jurisdiction Statement…………………………………………………………………… | 10 |
| Venue Statement…………………………………………………………………………… | 26 |
| Attempts to Settle/Mediate to Date…… …………………………………………….. | 27 |
| Statement of Facts Regarding Claims against Defendants………………………….. | 31 |
| Rick Peck and Lola Peck whether individually or collectively…………. | 31-50 |
| The Jail………………………………………………………………………………… | 51 |
| Post Jail …………………………………………………………………………………. | 59 |

3

PAGE 6

 **Gmail**

gwen caranchini <gwencaranchini@gmail.com>

---

## Answer to your letter dated Oct 11, 2017
1 message

---

**Rick Peck** <rickpeck5309@gmail.com>        Tue, Oct 17, 2017 at 11:11 PM
To: gwen caranchini <gwencaranchini@gmail.com>

Gwen,

After reading this 86 page document, I am sending you my final answer and feelings about the document and your letter dated October 11, 2017. What you have put into this document, has published me and my wife's life to the world and is just plain sinfully immoral.

I have made notes in bullet points so here goes.

- I am taking back any of the said tears that were wasted on such a hateful person.

- I take back anything I ever said to you about love or caring because of the disgust I feel after the performance you have been giving in the last year.

- Anything I ever gave you, I now see as a means to shut you up and stop the threats of you telling Lola about our affair.

- You have disgusted me more than I ever thought possible with all your lies and damning statements about my wife which is/was NONE of your business nor was she ever involved

- You have turned out to be the most hateful and mean person I have ever met and I am positive you are the biggest liar I have ever met.

- You're not ordering me around EVER again as you did when I was seeing you and threating you would tell Lola if I did not see you or call you every day so you would not call when I was with my family. And by the way, that so called phone that we shared was put in my truck at a job site and you wanted it because I told you I couldn't talk to you on the phone I had because all the calls and texts were on Lola's phone bill since the phone is in Lola's name. I did not ask for it, I did not want it and I sure as hell was not going to pay for it. You were and are just plain deceitfully evil.

- I will do as I see fit for me and my family since it is apparent the only one that matters in your world is you

- You are saying I would not sit down with you and give the reasons why I made this decision. I took you to breakfast and told you I was staying with my family and

https://mail.google.com/mail/u/0/?ui=2&ik=ed5f3f443b&jsver=g8gQ0BaJEzM.en.&view=pt&search=inbox&th=15f2dad869716f21&siml=15f2dad869716...   1/3

that was it.  THAT IS IT AND THAT IS ALL YOU GET.  You are not in control of me, anymore.  This was my decision to stop lying to my family.  THIS IS TOTALY OVER.

- You are saying that you did nothing to have us put a restraining order on you.  I have all the documentation saved and have given it to the Sheriff's department and the D/A's office.  Screaming on the phone.  Calling at one time, 11 times in a row and leaving a message each time in less than 5 minutes.  Who does that other than a crazy person.  Even though WE did not want you prosecuted, I asked you to stop 3 times, once by text, once on the phone in a very heated call that I hung up on you and then the very nice email and it only made it worse.  If I said one thing, you came back for hours, days or with 30 emails in answer to one I sent to nicely tell you to move on with your life.

- All the bullshit about Lola being dangerous and that is why I stayed with her.  Trying to build a case against her.  You are completely out of your miserable mind.  Saying that I stayed with Lola because Lola has guns and you were afraid she was going to use them on you and so I stayed to keep you safe.  Really????  Lola doesn't even own a gun, nor does she know how to shoot one and all the family can attest to the fact she never even comes out to shoot with us when we go out.  You know I told you I removed the guns from the house because my brother lost all his guns in his nasty divorce and never got them back, so I immediately removed them when Lola went to the doctor because of her blood pressure when I told her that I was having an affair with you.

- You need to start to take back your horrible lies and do it now as you are a mouth piece of trash that I am sorry I ever met.

- So finally, Lola *nor* I are giving you a working number or email address for you to contact and harass us daily as you do everyone else.  We want absolutely NO communication with you what so ever, ever again.  And nextly, Lola and I can hear each other's messages, texts and emails.  We have NO MORE SECRETS.  I lived that life longer than I want to remember and think about and I do not want to go through that stress ever again.

- Finally, Lola and I are staying together so there will be no future chance that you can say enough horrible stuff to separate us.  We are here for the long haul.

- I will let you know when I decide what attorney I will be going to use and they will get in touch with you.  **You will only have contact rights with the attorney and only when he says so, not when you say so.**  No more bullying.

- I asked the District Attorney, Michael, if I would be breaking the restraining order to send you an email giving you this information.  Since you received it, you will know I have written consent to do so.

- I will ask one more time, please stop this and go on with your life.  Because if you continue this line of abuse, with 86 page documents that we have to pay an attorney

to go through and answer and this costs us a load of money, we will make you prove every claim you are alleging because we know you can't and we will expect all our attorney's fees paid for by you for your frivolous, alleged garbage that you have been throwing at the wall hoping you can find something to stick. So sick. Go get a life and leave me alone. Thank you

- This is FINAL Please cease and desist

-  AND DO NOT SHOW UP AT MY HOUSE EVER AGAIN. YOU ARE NOT WELCOME

- My #1 subpoena will be to your church

And just so you know that this is me writing this, I have attached a notarized Statement of Fact.

Rick's Statement of Fact 10-17-17.pdf
544K

## STATEMENT OF FACT

### October 17, 2017

I, Richard W Peck, Jr, am making this Statement of Fact about the discrepancies regarding the email letter to Gwen Caranchini on January 19, 2017. And the email that this Statement of Fact is attached to dated October 17, 2017.

I, Richard W Peck, Jr. had Lola M Peck type the email letter on January 19, 2017 as I wanted it to be. All the thoughts, feelings and information in that email were from my notes and were put into a readable document.

Again, I, Richard W Peck, Jr arranged the information from the letter dated October 11, 2017 and the 86 page document from Gwen Caranchini and Lola M Peck typed it for me.

These 2 emails/letters/documents were/are my soul thoughts, feelings and wishes past, present, and future. This notarized document is to notify Gwen Caranchini and all else that I am solely responsible for the information in these emails and no one else.

I am also asking for my wishes to be taken into serious consideration and am asking that Gwen Caranchini CEASE AND DESIST this harassment immediately.

_____     __10/17/17__
Richard W Peck, Jr                  Date

State of: <u>KANSAS</u>
County of: <u>JOHNSON</u>
Subscribed to (or affirmed) before me this ___17th___ day of October, 2017
By Richard W. Peck, Jr, proved to me on the basis of satisfactory evidence to be the person(s)
Who appeared before me.

KRISTEN ANDERSEN
State of Kansas
My Appt. Exp. 2/29/20??

_____
Notary Public            (Seal)